763 So.2d 491 (2000)
Howard H. SCHLITT, Appellant,
v.
Richard L. CURRIER, Jr., and Lorraine Carol Schlitt, Successor Trustees and Beneficiaries of the Nancy Schlitt Trust, Thomas D. Currier, Kathie J. Currier, Andrea Lynne Schlitt, and Cynthia Lee Lafebvre, Beneficiaries, Appellees.
Nos. 4D98-1466, 4D98-2510.
District Court of Appeal of Florida, Fourth District.
July 12, 2000.
*492 John Beranek of Ausley & McMullen, Tallahassee, and Mary Copeland of Copeland & Chambliss, P.A., Fort Lauderdale, for appellant.
John M. Jorgensen and Kevin M. Wagner of Scott, Harris, Bryan, Barra & Jorgensen, Palm Beach Gardens, for appellees.
STONE, J.
We reverse a judgment entered in favor of Richard Currier. The judgment is based on discovery sanctions in which the court entered orders striking Schlitt's complaint and entering a default on Currier's counterclaim.
The record reflects numerous discovery violations and failures to file responsive pleadings. By this court's count, a total of thirteen motions to compel production or responsive pleadings were filed by Currier as a result of Schlitt's continual failure to respond to discovery requests, orders to compel discovery, orders setting deadlines for responsive pleadings, and the like. The trial judge consistently granted Currier's motions to compel and set deadlines for Schlitt's compliance; monetary sanctions were ordered three times, and dismissal and default were threatened in several court orders. Despite the threat of sanctions, Schlitt continued to ignore the trial court's orders.
On the ninth motion to compel and for sanctions, the trial judge denied Currier's request for default, but set a 5:00 p.m. deadline that day for Schlitt's answer to Currier's counterclaim to be filed. The answer was filed on time. However, Schlitt continued to ignore discovery orders, necessitating three more motions to compel and requests for sanctions, the third of which resulted in the ultimate sanction of striking Schlitt's complaint and answer to Currier's counterclaim and, further, entering a default to Currier's counterclaim.
Schlitt obtained new counsel, moved to set aside the orders striking his complaint and answer, and filed an affidavit attesting to his lack of knowledge as to the various orders compelling discovery and imposing sanctions. He claimed that he was unaware of a problem until March 19, 1998, when by chance he heard from his daughter, Lorraine Schlitt, who is also a party to the litigation. Schlitt maintained that he was never told of the numerous motions and orders for sanctions or that attorney's fees and costs had been awarded for noncompliance.
We recognize that where evidence supports a finding of deliberate and contumacious disregard of the court's authority, sanctions may include striking of pleadings. See Hobe Sound Restaurant Corp. v. Slater, 755 So.2d 649 (Fla. 4th DCA 1998); McCormick v. Lomar Indus., Inc., 612 So.2d 707 (Fla. 4th DCA 1993); Mahmoud v. International Islamic Trading, Ltd., 572 So.2d 979 (Fla. 1st DCA 1990); Overseas Equip. Co. v. Aceros Arquitectonicos, 374 So.2d 537 (Fla. 3d DCA 1979).
However, in Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993), the supreme court adopted a list of factors to be considered by a trial court in determining whether such extreme sanctions are warranted:
1) whether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2) whether the attorney has been previously sanctioned; 3) whether the client was personally involved in the act of disobedience; 4) whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; 5) whether the attorney offered reasonable justification for noncompliance; and 6) whether the *493 delay created significant problems of judicial administration. Upon consideration of these factors, if a sanction less severe than dismissal with prejudice appears to be a viable alternative, the trial court should employ such alternative.
Id. at 818.
In this case, the lengthy history of total non-compliance with numerous court orders to comply with pre-trial discovery would seemingly justify the trial court's ultimate sanction. Moreover, Schlitt does not dispute that his attorney's conduct was inexcusable.
Nevertheless, we reverse, as this court has interpreted Kozel as mandating reversal of such extreme sanctions, as an abuse of discretion, where the actions were the fault of the attorney and not the party. See Cole v. Bayley Prods., Inc., 661 So.2d 1299 (Fla. 4th DCA 1995); accord Elder v. Norton, 711 So.2d 586 (Fla. 2d DCA 1998); Walicki v. Waste Management, Inc., 703 So.2d 1095 (Fla. 2d DCA 1997). Here, Schlitt presented an affidavit swearing to complete ignorance of his attorney's actions. The issue of Schlitt's complicity is one of fact.
Accordingly, on remand, the trial court shall conduct an evidentiary hearing on the question of Schlitt's notice or knowledge of his attorney's conduct and, if knowledge is found, for a finding as to whether the actions were willful and deliberate. See Commonwealth Fed. Sav. and Loan Ass'n v. Tubero, 569 So.2d 1271 (Fla.1990); Boca Casino Cruises, Inc. v. Monte Carlo Cruise Concessions, Inc., 760 So.2d 281 (Fla. 4th DCA 2000).
We recognize that a question remains, whether Kozel precludes trial courts from imposing ultimate sanctions on a party regardless of the extent of willfulness and outrageous disregard of court orders by counsel where the court determines that less stringent remedies have failed or would be ineffective. Cole would indicate that such may be the case where the client has no knowledge of, despite benefitting from, counsel's misconduct. However, we need not resolve that issue at the present given the need for findings in the first instance on the question of Schlitt's knowledge, notice of, or willful blindness to, his attorney's contumacious conduct.
POLEN, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I write to note that even if the trial court were to find that the client were free from all the fault, sanctions short of dismissal might well be appropriate given the extent to which appellee incurred costs and fees as a result of the conduct described in the majority opinion.